UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| JOHN RODRIGUEZ, | ) | No. ED CV 10-1406-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 22, 2010, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 29, 2010, and October 1, 2010. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 9, 2011, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on July 6, 1970. [Administrative Record ("AR") at 67, 130, 161.] He has a high school education, and past relevant work experience as a library assistant, medical records clerk, food service worker, and patient accounts worker. [AR at 26, 29, 63-64, 167, 171, 183, 223.]

Plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income payments on July 16, 2008, and July 25, 2008, respectively, alleging that he has been unable to work since May 1, 2007, due to paranoia, depression, bipolar disorder, and suicidal ideations. [AR at 67-70, 130-40, 161-72.] After his applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 71-74, 77, 85-90.] A hearing was held on April 15, 2010, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 20-66.] A vocational expert, a medical expert, and plaintiff's friend also testified. [AR at 29-46, 57-65.] On May 21, 2010, the ALJ determined that plaintiff was not disabled. [AR at 6-19.] When the Appeals Council denied plaintiff's request for review of the hearing decision on August 10, 2010, the ALJ's decision became the final decision of the Commissioner. [AR at 1-3, 5.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since May 1, 2007, the alleged onset date of disability.[1] [AR at 11.] At step two, the ALJ concluded that plaintiff has the following severe impairments: schizoaffective disorder, polysubstance abuse in remission, and anxiety disorder. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 12.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a full range of work at all exertional levels but with the following nonexertional limitations: plaintiff is limited to simple repetitive tasks and non-intense contact with coworkers and supervisors, he is to avoid public contact, and is precluded from tasks requiring hypervigilance and responsibility for the safety of others. [Id.] At step four, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 17.] At step five, the ALJ determined that plaintiff can perform jobs that exist in significant numbers in the national economy, specifically as a hand packager, store laborer, and auto body repair helper. Accordingly, the ALJ found plaintiff not disabled. [AR at 18-19.]

---

[1] The ALJ also determined that plaintiff is insured for Disability Insurance Benefits purposes through June 30, 2009. [AR at 11.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ did not properly: (1) consider the opinion of psychiatric consulting examiner Dr. Linda Smith; (2) consider the opinion of a lay witness; and (3) evaluate plaintiff's RFC. [Joint Stipulation ("JS") at 3-4, 16, 25.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

### A.  CONSULTING EXAMINER'S OPINION

Plaintiff contends that the ALJ erred in evaluating the opinion of psychiatric consulting examiner Dr. Linda Smith. [JS at 3-16.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. Where a treating physician's opinion does not contradict other medical evidence, an ALJ must provide clear and convincing reasons to discount it. An ALJ may afford less weight to a treating physician's opinion that conflicts with other medical evidence only if the ALJ provides specific and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's

opinion is 'still entitled to deference.'") (citation omitted); Social Security Ruling[3] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Similar rules apply to an ALJ's evaluation of an examining physician's opinion. Lester, 81 F.3d at 830-31.

Dr. Smith performed a complete psychiatric evaluation of plaintiff on March 12, 2009, and diagnosed him with obsessive compulsive disorder, panic disorder, and psychotic disorder, not otherwise specified. [AR at 290-97.] She assigned plaintiff a Global Assessment of Functioning ("GAF") score of 54,[4] opined that he was "overall moderately impaired," and concluded that his psychiatric prognosis was "fair." [AR at 295-96.] She also noted that plaintiff "is a bit of a puzzle regarding diagnosis. He has intermittent periods of what sound like psychotic type paranoia but when he is not in that state he can look at these symptoms objectively. ... He does have symptoms of OCD and panic attacks and some of the symptoms do suggest possibly being connected especially with OCD." [Id.] Dr. Smith further opined that plaintiff has mild to moderate limitations in six categories of functional impairments.[5] [AR at 296-97.]

---

[3] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[4] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score of 51-60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)" DSM-IV, at 34.

[5] Dr. Smith stated that plaintiff is (1) mildly impaired in his ability to understand, remember or complete simple commands due to possible interference with concentration and memory with episodes of fearfulness and possible paranoia. [AR at 296.] He is moderately impaired in his ability to (2) understand, remember or complete complex commands due to possible interference with concentration and memory with episodes of fearfulness and possible paranoia; (3) interact appropriately with supervisors, co-workers, or the public due to intermittent periods of paranoia and probable psychosis; (4) comply with job rules such as safety and attendance due to intermittent periods of paranoia and probable psychosis; (5) respond to change in the normal
(continued...)

In the decision, the ALJ stated that she gave Dr. Smith's opinion "great weight" [AR at 16], and asserted that she relied on Dr. Smith's opinion in reaching the RFC determination. [AR at 16-17.] She then addressed some, but not all, of Dr. Smith's opinion. [AR at 16-17.] Specifically, the ALJ noted that Dr. Smith opined in her report that plaintiff is "mildly to moderately" impaired in his mental abilities to do work, that he was "overall normal," that his prognosis was "fair," and that if he were compliant with his medications "his condition would improve." Id. This summary misstates the evidence in various regards. First, Dr. Smith actually stated that plaintiff is "overall moderately impaired," not that plaintiff is overall normal. [AR at 17, 296.] Second, Dr. Smith actually said that with medication plaintiff "may" be able to improve, not that he "would" improve. [AR at 296.] Further, Dr. Smith's opinion regarding plaintiff's moderate functional limitations, specifically his ability to function in a workplace setting, appears to be at odds with the ALJ's assessment that the consultative examiner (and others) "concluded that [plaintiff's] limitations would not preclude the performance of substantial gainful activity." [AR at 17.] An ALJ cannot ignore or misstate competent evidence in order to justify her conclusion. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). But that is what the ALJ did here.

Next, while Dr. Smith specifically found plaintiff moderately limited in his ability to: comply with job rules such as safety and attendance; respond to change in the normal workplace setting; and maintain persistence and pace in a normal workplace setting, the ALJ did not specifically mention or reject these limitations in the decision, include them in the RFC determination, or include them as part of the hypothetical presented to the vocational expert.[6] By doing so, it appears that the ALJ implicitly rejected these portions of Dr. Smith's opinion without providing any reason for doing so. This constitutes error. "Judicial review of an administrative decision is

---

[5](...continued)
workplace setting due to intermittent periods of paranoia and probable psychosis; and (6) maintain persistence and pace in a normal workplace setting due to intermittent periods of paranoia and probable psychosis. [AR at 296-97.]

[6] The ALJ posed a hypothetical to the vocational expert of a person limited to simple, repetitive tasks with no public contact; only limited, non-intense contact with co-workers and supervisors; no tasks requiring hypervigilance; and no responsibility for the safety of others. [AR at 64.]

impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (finding that an ALJ's failure to explain why he disregarded medical evidence prevented "meaningful judicial review"). The ALJ's failure to expressly explain why she rejected part of Dr. Smith's findings prevents meaningful judicial review. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that ... [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) (internal citation omitted).

Accordingly, the ALJ's mischaracterization of Dr. Smith's statement, and failure to provide specific reasons to reject portions of her opinion, was in error. Remand is warranted for the ALJ to properly evaluate Dr. Smith's opinion.

### B. LAY WITNESS STATEMENT

Plaintiff next contends that the ALJ improperly rejected the lay witness statement and testimony of his friend and roommate, Armando Alonso. [JS at 3, 16-21.]

An ALJ may consider lay witness testimony to determine the severity of a claimant's impairments and how the impairments affect his ability to work. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); Smolen, 80 F.3d at 1289 (testimony from lay witnesses, who see the plaintiff on a daily basis and are often family members, is of particular value); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("An eyewitness can often tell whether someone is suffering or merely malingering. ... [T]his is particularly true of witnesses who view the claimant on a daily basis."). The ALJ may discount the

testimony of lay witnesses only for "reasons that are germane to each witness." Dodrill, 12 F.3d at 919; Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

In support of plaintiff's application for benefits, Mr. Alonso submitted a third party function report and testified at the hearing. [AR at 57-61, 173-82.] In the report, Mr. Alonso stated, among other things, that he has known plaintiff for approximately nineteen years, has been his roommate since they met, and spends time with him "24/7" except when he is at work. [AR at 173.] After describing plaintiff's daily activities, Mr. Alonso stated that plaintiff has been "unable to work due to his mental health" and medications, is unable to get a job because his "paranoia-schizophrenia has him always thinking that people are always judging him," makes inappropriate comments out loud, is kept awake at night because of his paranoia, and fears for his life. [AR at 173-74.] Mr. Alonso further stated that plaintiff cannot be around other people, cannot go out alone, gets confused easily, does not like to interact with others, forgets whether or not he has taken his medication, has a short attention span, does not follow written or spoken instructions well, has "big time" trouble dealing with authority figures, gets nervous, does not handle stress very well, and is uncomfortable with any change in his routine. [AR at 176-79.] In addition, plaintiff is "not good at understanding what people are trying to say," his mind wanders, he has a hard time concentrating on the topic at hand, and gets into trouble and gets fired from jobs because of his inability to follow directions. [AR at 180.]

At the hearing, Mr. Alonso testified that plaintiff is very paranoid, gets depressed, does not shower daily like he should, has no motivation for "making himself feel better," and "seems down a lot." [AR at 59-60.] Mr. Alonso further stated that even though he wants plaintiff "to be independent as much as he can," if he were an employer, even he would not hire plaintiff because plaintiff's "attention span is almost non-existent," he does not retain information, gets confused easily, and has no attention for detail. [AR at 61.]

In the decision, the ALJ rejected Mr. Alonso's statements and found him "only credible to the extent that the [plaintiff] can do the work described [in the ALJ's decision]." [AR at 14.] In other words, the ALJ only found Mr. Alonso credible to the extent that his statements were in agreement with the ALJ's decision. The ALJ rejected Mr. Alonso's statements on the grounds that

9

he "is not a medical professional, and as a lay witness, he is not competent to make a diagnosis or argue the severity of [plaintiff's] symptoms in relation to his ability to work." [AR at 15.] The ALJ also rejected Mr. Alonso's statements because as plaintiff's "friend and roommate, he has the pecuniary motivation to be helpful to the [plaintiff] so he can receive benefits." [Id.]

The ALJ's reasons for rejecting Mr. Alonso's report and testimony are not germane reasons specific to him. First, the ALJ mischaracterized Mr. Alonso's statements in concluding that he is not competent to diagnose plaintiff's impairments or discuss their severity because he is not a medical professional. [AR at 15.] Mr. Alonso did not solely offer his own diagnosis of plaintiff. Rather, he in the main reported his own observations that plaintiff had been hospitalized several times because his fear and paranoia prompted multiple suicide attempts, and testified to his independent observations of plaintiff's functional limitations on a daily basis over a period of twenty years. [AR at 58-61, 179, 181-82.] Second, the fact that Mr. Alonso is not a medical professional is not a germane reason for rejecting his testimony. Lay witnesses, by definition, are not medical professionals, and the ALJ's reasoning would lead to a wholesale dismissal of all lay witnesses. "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Sprague, 812 F.2d at 1232.

Likewise, the ALJ's rejection of Mr. Alonso's testimony on the basis that he is financially interested in plaintiff's receipt of benefits was improper because such a basis for rejection would also result in the dismissal of testimony of any witness living with a claimant, which would undermine the assumption that lay testimony from witnesses who see a claimant every day "is of particular value." Smolen, 80 F.3d at 1289. Although plaintiff's friend and roommate may gain financially to some extent if plaintiff receives benefits, this rationale, by itself, is an insufficient reason for discrediting his statements and testimony. See, e.g., Traister v. Astrue, 2010 WL 1462118, at *4 (C.D. Cal. April 13, 2010) (ALJ improperly rejected the lay testimony of a plaintiff's boyfriend based on an assumption that he had an emotional and financial motivation to help the plaintiff obtain disability benefits); Daniels v. Astrue, 2010 WL 1931264, at *7 (C.D. Cal. May 12, 2010) (holding that the ALJ erred when he discounted a lay witness' testimony on the bases of

bias and having an interest in the outcome). The ALJ's assertion that Mr. Alonso has a pecuniary interest is not substantial evidence of bias. Accordingly, the ALJ erred in failing to provide specific reasons germane to Mr. Alonso for discounting his statements. Remand is warranted on this issue.

**C.  RFC DETERMINATION**

The ALJ determined that plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: plaintiff is limited to simple repetitive tasks and non-intense contact with coworkers and supervisors, he is to avoid public contact, and is precluded from tasks requiring hypervigilance and responsibility for the safety of others. [AR at 12.] Plaintiff asserts that the ALJ erred in failing to include in her RFC determination and in her hypothetical questions to the vocational expert the opinion of Dr. Smith that plaintiff has moderate difficulties in maintaining concentration, persistence or pace. [JS at 26-27.]

In determining plaintiff's disability status, the ALJ has a responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); see SSR 96-8p, 1996 WL 374184, at *5, *7. Similarly, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). Since the ALJ's RFC determination was based, in part, on her analysis of Dr. Smith's opinion, which the Court finds was improper for the reasons discussed above, the ALJ is instructed to reassess plaintiff's RFC after reconsideration of Dr. Smith's opinion. Accordingly, remand is warranted on this issue.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate for the ALJ to reevaluate Dr. Smith's opinion, to properly reconsider the statements of plaintiff's friend and roommate, and to properly assess plaintiff's RFC.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 1, 2011

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE